**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHERYLANN GREENMAN and JIM BASTL, on behalf of themselves and a Class, | ) ) ) ) | |
| PLAINTIFFS, | ) ) | Civil Action No. 19 cv 7858 |
| | ) | Honorable Andrea R. Wood |
| KEOUGH & MOODY, P.C., | ) ) | |
| DEFENDANT. | ) | |

<u>**FIRST AMENDED AND SUPPLEMENTAL  CLASS AND INDIVIDUAL COMPLAINT**</u>

Plaintiffs, CherylAnn Greenman and Jim Bastl, bring this action to secure redress from unlawful credit and collection practices engaged in by Defendant Keough & Moody, P.C. Plaintiffs allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") both individually and on behalf of a class.

<u>**VENUE AND JURISDICTION**</u>

1.      Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

2.      Venue in this District is proper under 28 U.S.C. § 1391 because Defendant conducts business in this district, and Defendant attempted to collect a debt from consumers that each reside in this District.

<u>**PARTIES**</u>

3.      Plaintiff CherylAnn Greenman ("Greenman") is an individual and resident of the State of Illinois, and is a "consumer" as defined at 15 U.S.C § 1692a(3) of the FDCPA.

1

4.      Plaintiff Jim Bastl ("Bastl") is an individual and resident of the State of Illinois, and is a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

5.      Defendant Keough & Moody, P.C., ("Keough" or "Defendant") is a debt collection law firm engaged as a "debt collector" as defined by and within the meaning of 15 U.S.C. § 1692a(6) the FDCPA, and is engaged in the business of collecting debts in this State where Keough regularly collects or attempts to collect defaulted consumer debts owed or due or asserted to be owed or due another.

6.      Keough maintains a web site, https://kmlegal.com/.

7.      Keough's website states in part as follows:

**Community Association Law**

**The boards of condominium, townhome, and homeowners' associations must contend with many different areas of the law including corporate law, real estate law, contract law, collection law, foreclosure and bankruptcy law, zoning law and taxation. Thus, its attorney must not only effectively collect assessments, analyze contracts, interpret and draft governing documents, but also advise Boards of Directors regarding matters of real property, covenant enforcement, governance, insurance and litigation. At Keough & Moody, P.C., our attorneys have more than 65 years in combined experience providing efficient and effective legal services in all of these areas for its community association clients.**

Keough & Moody, P.C., https://kmlegal.com/services/community-association-law/, Accessed on 24 Nov., 2019.

8.      Keough maintains an office in Chicago, Illinois.

9.      Keough has filed over 100 lawsuits in Cook County, Illinois within the last year to collect defaulted or past-due condominium assessments from consumers.

## FACTS

10.      Plaintiffs reside in a condominium located at 11133 Eaton Court, Westchester, Illinois, 60154 (the "Property").

11.      Plaintiffs incurred an alleged debt, in connection with the Property, to Westchester Place Homeowners Association (the "Association") for past due monthly assessments and other charges stated to be owed in relation to the Property.

12.      Plaintiffs' debt was incurred for personal, family or household purposes (the "alleged debt") and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

13.      Plaintiffs' alleged debt was declared to be in default.

14.      The alleged debt included some past due monthly assessments, late charges, and a number of other charges that are disputed by Plaintiffs as they were not authorized by any agreement, or allowed to be imposed by law.

15.      The alleged debt included a $300 charge that Plaintiffs did not owe.

16.      Sometime thereafter, the Association hired Defendant Keough to collect the alleged debt from both Plaintiffs.

17.      Keough was aware that Plaintiffs disputed that they owed the $300 charge to the Association.

18.      Keough was aware that no legal nor factual basis existed for the collection of the $300 charge from Plaintiffs.

19.      Keough attempted to collect the $300 charge anyway, from Plaintiffs.

20.     On or after April 29, 2019, Keough caused to be mailed to Plaintiffs at their residence, and in connection with the alleged debt, two copies of a "Notice".  (Exhibit A, Notice mailed to Plaintiffs).

21.     The Notice states that "THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT". (Exhibit A, Notice mailed to Plaintiffs).

22.     The Notice was Defendant's first communication with Plaintiffs in connection with the collection of the alleged debt, and is a form letter.

23.     The Notice contained a Notice of Debt as that term is defined and understood under section 1692g of the FDCPA.

24.     The Notice sought to collect $1600.00 from Plaintiffs, which included a $300 charge, among others, that was not owed by Plaintiffs.

25.     Plaintiff did not owe $1600.00 to the Association, and thus Keough attempted to collect an inflated claim from Plaintiffs.

26.     § 1692e(2) prohibits debt collectors from making a "false representation of ... the character, amount, or legal status of any debt." *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 369 (7th Cir. 2018).

27.     Keough violated section 1692e by misrepresenting the amount of the alleged debt in the Notice.

28.     The Notice states in part as follows:

**…This is your Notice pursuant to Section 9-102 et seq. of the Illinois Code of Civil Procedure that payment in full of the amount stated above is demanded of you, and unless payment of the full amount in certified funds is made within thirty-five (35) days of the date of this Notice,  A LAWSUIT MAY BE FILED TO TERMINATE YOUR RIGHT TO POSSESION OF THE UNIT…**

(Exhibit A, Notice mailed to Plaintiffs).

29.     The Notice thus states that a lawsuit will not be filed until at least thirty-five days after the date on the Notice.

30.     The Notice further states:

**…THE LAW DOES NOT REQUIRE ME TO WAIT UNTIL THE END OF THE THIRTY (30) DAY PERIOD BEFORE SUING YOU TO COLLECT THIS DEBT…**

(Exhibit A, Notice mailed to Plaintiffs).

31.     The Notice thus also communicates that Plaintiffs can be sued at any time.

32.     Keough thus communicated both that it could sue Plaintiffs at any time to collect the alleged debt, as well as that it would wait until after thirty-five days after the date of the Notice before suing Plaintiffs.

33.     Keough's Notice would confuse the unsophisticated consumer as to when a lawsuit may be filed to collect a debt.

34.     Section § 9-104.1 of the Forcible Act provides:

**§ 9-104.1. Demand; Notice; Return; Condominium and Contract Purchasers.**

**(a) In case there is a contract for the purchase of such lands or tenements or in case of condominium property, the demand shall give the purchaser under such contract, or to the condominium unit owner, as the case may be, <u>at least 30 days to satisfy the terms of the demand before an action is filed.</u>**

735 ILCS 5/9-104.1 (emphasis added)

35.     Thus, under Illinois law, Keough is required to wait at least 30 days before filing an action against Plaintiffs.

36.     Keough misrepresented Plaintiffs' rights under the law, as it could not sue Plaintiffs to collect the alleged debt before thirty days after Plaintiffs received the Notice, though

5

it falsely stated that *it did not have to wait* until the end of the thirty day period to sue Plaintiffs to collect the alleged debt.

37.     Keough misrepresented the amount of the alleged debt, as Plaintiffs owed hundreds of dollars less than the amount sought on the Notice.

38.     Because Keough misrepresented the amount of the alleged debt, Plaintiffs became emotionally distressed as they could not afford to pay the amount sought, which was inflated, though according to Keough's Notice they were required to pay said full amount to avoid being sued.

39.     Plaintiffs each were confused about the earliest date upon which they could be sued, as the Notice contained information that conveyed both that they could be sued at any time, and that they would not be sued until at least 35 days after the date on the Notice.

40.     On August 31, 2019, Plaintiffs paid $1600 toward the alleged debt.

41.     On or after September 12, 2019, Keough caused to be mailed to Plaintiffs, via their counsel, another letter (the "Second Letter"), also in connection with the collection of a debt. (Exhibit B, Second Letter).

42.     The Second Letter seeks to collect $1262.75 from Plaintiffs.

43.     The Second Letter seeks to collect new charges, costs, and fees from Plaintiffs.

44.     The Second Letter seeks to collect money that was not sought from Plaintiffs in the Notice.

45.     The Second Letter continues to attempt to collect a $300 charge from Plaintiffs, that they did not owe.

46.     Keough violated section 1692e by attempting to collect the $300 charge from Plaintiffs.

47.     Section 1692g provides as follows:

**§ 1692g. Validation of debts.**

**(a) Notice of debt; contents**

**Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**

**(1) the amount of the debt;**
**(2) the name of the creditor to whom the debt is owed;**
**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**
**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**
**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

48.     Title 15 §1692g requires a debt collector, within 5 days of its first communication to a consumer, to provide the consumer with an effective validation notice notifying the consumer that it has 30 days after receipt of the notice to challenge the debt and require the collector to verify the debt. *Moreno v. Afni, Inc.*, No. 19 C 2505, 2019 U.S. Dist. LEXIS 107654, at *3 (N.D. Ill. June 27, 2019).

49.     Keough failed to provide a validation notice to Plaintiffs regarding the debt sought to be collected in the Second Letter.

50.     Keough violated section 1692g by not providing a validation notice to Plaintiffs regarding the debt sought to be collected in the Second Letter.

7

51.     On or after October 15, 2019, Keough caused to be mailed to Plaintiffs, via their counsel, another letter (the "Third Letter"), also in connection with the collection of a debt. (Exhibit C, Third Letter).

52.     The Third Letter seeks to collect $1187.75 from Plaintiffs.

53.     The Third Letter seeks to collect new charges, costs and fees from Plaintiffs.

54.     The Third Letter seeks to collect money that was not sought from Plaintiffs in the Second Letter.

55.     Keough failed to provide a validation notice to Plaintiffs regarding the debt sought to be collected in the Third Letter.

56.     Keough violated section 1692g by not providing a validation notice to Plaintiffs regarding the debt sought to be collected in the Third Letter.

57.     The Third Letter acknowledges that a $300 charge previously sought to be collected was not properly owed.

58.      The Third Letter communicated that the Association removed the very $300 charge that Keough previously communicated would have to be paid in full by Plaintiffs, or that suit would follow.

59.     On October 31, 2019, Keough filed a lawsuit on behalf of the Association, titled *Westchester Place Homeowner's Association, an Illinois Not-For-Profit Corporation, Plaintiff, vs. West Suburban Bank, as Trustee under the provisions of a Trust Agreement Dated the 26th of October, 2012, et al,* in the Circuit Court of Cook County, Illinois, Case No. 20194007242 (the "State Action"). (Exhibit D, Summons and State Action Complaint).

60.     The State Action sought to collect $1212.75 from Plaintiffs, and sought possession of the Property.

61.     The State Action contains a "Notice of Debt" as that term is understood and defined in section 1692g of the FDCPA.

62.     The State Action was served on Plaintiff Bastl on November 21, 2019, who immediately forwarded a copy of the same to Greenman.

63.     The State Action contained a Notice of Debt under section 1692g.

64.     The Notice of Debt gives Plaintiffs 30 days to dispute the debt in writing, from November 21, 2019.

65.     On December 1, 2019, Plaintiff's counsel emailed a copy of the first-filed complaint in this case to Keough at collections@kmlegal.com.

66.     The complaint constituted a written dispute of the alleged debt under section 1692g.

67.     Section 1692g(b) states that the debt collector must stop debt collection activities temporarily if the debt is disputed in writing under subsection (a)(4). The debt collector may recommence debt collection activities upon mailing a copy of the verification or judgment in the case of a dispute, and upon mailing the name and address of the original creditor in the case of a request for information about the original creditor's identity. § 1692g(b). *Rosado v. Taylor,* 324 F. Supp. 2d 917, 928-29 (N.D. Ind. 2004)

68.     Keough did not provide verification to Plaintiff at any time after Plaintiff disputed the alleged debt in writing on December 1, 2019.

69.     Keough continued to collect the alleged debt, however, via litigation via attending court hearings for the purpose of moving toward judgment—despite having to suspend its efforts to do so under the provisions of section 1692g until it mails verification to Plaintiff.

70.     Keough violated § 1692g(b) by continuing to collect the alleged debt via litigation without first mailing verification to any Plaintiff.

71.     Keough's Notice of Debt served on November 21, 2019 stated that the "amount of the debt appears on the notice enclosed herewith."

72.     Keough's Notice of Debt, however, does not state the amount of debt.

73.     Moreover, there was no "notice contained herewith" provided to Plaintiff.

74.     The Seventh Circuit has explained that § 1692g(a)(1) requires a collection letter to "state [the amount of debt] clearly enough that the recipient is likely to understand it." *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004).

75.     Keough violated § 1692g(a)(1) by not stating the amount of debt in its communication to Plaintiff Bastl.

76.     On January 2, 2020, Plaintiff's counsel requested verification from Keough's attorneys, Hinshaw & Culbertson, via email, stating "During the last status hearing in the state action underlying this claim, the court directed your client to provide my clients a breakdown of the amounts due and owing, which your client apparently could not provide at said hearing. Kindly advise whether you will be providing the same, or whether I should contact your client directly for this information. Thank you."

77.      At no time thereafter did Keough's attorneys or Keough provide verification of the alleged debt to Greenman or Bastl, in violation of § § 1692g and 1692g(b).

78.     Rather, on January 3, 2020, counsel for Keough merely communicated to Plaintiff's attorney as follows: "It has advised us that the current attorneys' fees are $1,090 and court costs are $811.87."

79.     Notably, both Keough and its counsel failed to provide the amount of debt owed, as the "attorneys' fees" and "court costs" does not provide the amount of debt, but only a portion of the amount of debt.

80.     Moreover, the amounts communicated were false and inflated, and Defendant continued to try to collect the alleged debt thereafter without first mailing verification to Plaintiff.

81.     Keough also made misrepresentations in connection with communicating the return date and trial date to Greenman.

82.     The Summons associated with the State Action served on Greenman states that a trial is set to occur on December 2, 2019. (Exhibit D, Summons and State Action Complaint).

83.     Keough thus gives Plaintiffs until December 21, 2019 to dispute the alleged debt, but only until December 2, 2019 to pay it—or face trial on that date.

84.     Plaintiffs were confused as to what the effect of disputing the alleged debt in writing, by December 21, 2019, would be if trial is set for December 2, 2019, as Plaintiffs were given much more time to dispute the debt sought, than to pay it.

85.     The unsophisticated consumer would be confused as to the effect of disputing the alleged debt in writing by December 21, 2019, when a trial was already set to proceed on December 2, 2019.

86.     The confusion would be exacerbated because the "Notice of Debt" provided to Plaintiff by Defendant on November 21, 2019, failed to inform Plaintiffs that Keough would also have to suspend any attempts to collect the alleged debt *via litigation*, if a timely written dispute was communicated to Defendant by Plaintiffs, until or unless Defendant mailed verification to the Plaintiff.

11

87.     Keough filed the State Action seeking money that was already paid by Plaintiffs.

88.     Keough has a policy and practice of waiting substantial and unreasonable lengths of time to deposit checks from condominium residents so that said residents would continue to incur late fees and attorney fees as a result of Keough's delayed deposits.

89.     For example, Plaintiffs sent Keough a check to Keough for $200 on November 4, 2019, that was not cashed until November 22, 2019; Plaintiffs sent Keough a check for $200 On November 16, 2019 that was not deposited until December 11, 2019, and Plaintiffs sent Keough a check for $200 on December 2, 2019 that was not deposited until December 27, 2019.

90.     Further, on November 27, 2019, Plaintiff Greenman personally delivered a check to Keough for the amount sought in the State Action: $1212.75.

91.     After Keough failed to cash the check, Plaintiffs thereafter submitted to Keough another check in the amount of $1212.75.

92.     Despite this fact, in a hearing held in the State Action on December 2, 2019, Keough chose to continue the State Action instead of dismissing the same, and seeking leave to serve Plaintiff Greenman via the issuance of an alias summons. (Exhibit E, Order).

93.     Greenman attended the hearing, during which she informed the Court that she had paid the alleged debt amount sought in the State Action complaint and requested that counsel from Keough provide her a breakdown of the alleged debt.

94.     In truth and in fact, said counsel from Keough told the judge that she did not know how much Plaintiffs owed and sought to continue the hearing.

95.     The presiding judge directed said attorney from Keough to provide the amount due of the alleged debt, to Greenman, before the next hearing in the case on January 6, 2020.

96.     Keough did not do so, however.

12

97.     Though entered on December 2, 2019, Keough unfairly did not mail the Order, and accompanying documents, to Plaintiffs until December 30, 2019, seemingly to prevent Plaintiffs from receiving timely notice of the hearing set on January 6, 2010.

98.     Plaintiffs received the Order dated December 2, 2019 on January 3, 2020, as a result of Keough's decision to wait until December 30, 2019 to mail the same.

99.     15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (2) The false representation of—**

**(A) the character, amount, or legal status of any debt; or**

**(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

**. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**

**. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

**. . . (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and <u>the failure to disclose in subsequent communications that the communication is from a debt collector</u>, except that this paragraph shall not apply to a formal pleading made in connection with a legal action. . . .**

(emphasis added)

100.     The documents received with the Order dated December 2, 2019 were together a "subsequent communication" pursuant to  15 U.S.C. § 1692e(11).

101.    The documents an Order dated December 2, 2019 did not indicate that they were from a debt collector.

102.    Keough thus failed to indicate, in a subsequent communication with Plaintiff, that the communication that it submitted to Plaintiffs is from a debt collector, in violation of 15 U.S.C. § 1692e(11).

103.    Further, the Order dated December 2, 2019 set a January 6, 2020 next hearing date for status on "return of service".

104.    On December 11, 2019, Keough caused Plaintiff Greenman to be served with process. (Exhibit F, State Action Complaint).

105.    The State Action Complaint served on Greenman stated a "Return Date" of December 2, 2019.

106.    The Alias Summons served on Greenman indicated that trial would occur on January 6, 2020.

107.    Both statements by Keough were false, as Greenman's return date was not December 2, 2019, and no trial was set to proceed on January 6, 2020 as the relevant Order expressly indicated that it was not set for trial.

108.    Both statements thus violated 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(5).

109.    15 U.S.C. 1692f of the FDCPA provides as follows:

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

110.     Both statements by Keough, relating to a false return date and a false trial date, violated 15 U.S.C. § 1692f, as each misrepresentation constituted an unfair and unconscionable practice by Keough.

111.     Moreover, the State Action complaint served on Greenman, like the one served on Bastl, misrepresented the amount of debt owed, and did not provide the "amount of debt", since the Notice of Debt provided in the State Action complaint indicated that the amount of debt appeared on a notice enclosed therewith, which was not included. The omission was significant, as Plaintiff paid money sought in the State Action complaint thinking that she had paid off the alleged debt, but Defendant thereafter insisted that more money was owed—which would not have occurred had Defendant provided the amount of money owed by Greenman in the first place, as required by and in compliance with §1692g.

112.     Plaintiff Greenman experienced anxiety, fear, feelings of helplessness, and confusion due to Keough's reference to a "Return Date" as being a date that had already passed, as she thought there was nothing she could do to prevent a judgment from being entered.

113.     Plaintiff Greenman also experience anxiety, fear, feelings of helplessness and confusion due to Keough's false statement that a trial would proceed on January 6, 2020.

114.     The State Action sought to collect an inflated claim.

115.     The State Action is pending to this date as Keough has repeatedly sought and obtained continuances to continue the litigation, even though Plaintiffs do not owe the money sought by Keough, so that it could charge further attorney fees and costs to Plaintiffs.

116.     Neither Keough nor its client has provided statements or a ledger to Plaintiffs since the filing of the State Action, that could allow Plaintiffs to calculate the attorney fees and

costs that Keough continues to charge its client as a result of the actions taken by Keough in the State Action litigation, as described above.

117.    Keough's practices of: waiting up to a month to provide Plaintiffs with Orders entered in the State Actions to prevent consumers from appearing a Court, purposefully waiting weeks to deposit checks paid by condo owners to induce late charges and further attorney fees, obtaining continuances in court when the claim was moot and the debt paid for the purpose of churning attorney fees and costs, and refusal to provide the amounts it states Plaintiffs owe for the purpose of continuing the State Action litigation to obtain further fees and costs, and collecting amounts not due and owing, constitute misleading, deceptive, confusing, unconscionable, and unfair actions, in violation of §§ 1692e and 1692f.

118.    15 U.S.C. 1692d of the FDCPA provides as follows:

**A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. . .**

119.    Keough's practices referenced in the paragraph above also constitutes conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of § 1692d.

120.    With respect to the Notices of Debt served by Keough on Plaintiffs, the 7th Circuit has created a "safe harbor" letter in an attempt to provide guidance to debt collectors so that they do not run afoul of complying with section 1692g, which reads in part as follows:

**The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.**

*Wolff v. Stellar Recovery, Inc.*, No. 14 C 09876, 2016 U.S. Dist. LEXIS 15208, at *10

(N.D. Ill. Feb. 5, 2016), citing *Bartlett v Heibl*, 128 F. 3d 497, 502 (7th Cir. 1997) (emphasis added).

121.    In *Bartlett*, the Court warned debt collectors as follows: "We cannot require debt collectors to use "our" form. But of course if they depart from it, they do so at their risk. Debt collectors who want to avoid suits by disgruntled debtors standing on their statutory rights would be well advised to stick close to the form that we have drafted. It will be a safe haven for them, at least in the Seventh Circuit." *Id*.at 502.

122.    Keough's Notice of Debt, attached to the State Action complaints served on each Plaintiff, departs from *Bartlett*, as it does not communicate (deviating from the model, suggested language in *Bartlett*) that Defendant is required to suspend its efforts to collect the debt including via litigation if Plaintiff requests proof of the alleged debt within the thirty-day period that begins with receipt of the Notice.

123.    Keough's Notices of Debt violated 15 U.S.C. § 1692g.

124.    Keough charged the Association money for preparing and mailing the very communications that attempt to collect an inflated claim from Plaintiffs, that misstates their rights under the FDCPA, and/or that omit information that Plaintiffs are entitled to receive under the FDCPA.

125.    Plaintiffs were damaged financially by Keough's attempts to collect debts from Plaintiffs that they did not owe, and hired an attorney to advise them on the meaning of the various communications from Keough.

126.    Plaintiffs were confused and emotionally distressed by Keough's communications, each suffering sleep loss, nervousness, worry, anxiety and fear as a result, in addition to financial damages.

**COUNT I—FDCPA—CLASS COUNT**

127.    Plaintiffs incorporate by reference the foregoing paragraphs.

128.    Section § 9-104.1 of the Forcible Act provides:

**§ 9-104.1. Demand; Notice; Return; Condominium and Contract Purchasers.**

   **(b) In case there is a contract for the purchase of such lands or tenements or in case of condominium property, the demand shall give the purchaser under such contract, or to the condominium unit owner, as the case may be, <u>at least 30 days to satisfy the terms of the demand before an action is filed.</u>**

129.    The Forcible Act thus requires that Condo Associations give 30 days *or more* to owners to satisfy the Demand made on an owner.

130.    By stating in the Notice, Exhibit A, that the law did not require Keough to wait until 30 days after Plaintiffs' receipt of the Notice to sue Plaintiffs, though Keough could not legally file suit against Plaintiffs until at least 30 days **after** the date of receipt by Plaintiffs of the Notice dated April 29, 2019, Keough misrepresented Plaintiffs' legal rights regarding the alleged debt and falsely communicated material information about the date upon which Plaintiffs could be sued.

131.    An unsophisticated consumer would be confused by the separate and contradictory deadlines stated in the Notice, as he or she would not know how much time he or she would have to pay or dispute a debt before a lawsuit were filed to collect the debt in question and, in fact, Plaintiffs were each confused by the differing deadlines contained in the Notice.

132.    Section 1692e provides as follows:

   **§ 1692e. False or misleading representations**

   **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.   Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
                                              **\* \* \***
   **(2) The false representation of—**
   **(A) the character, amount, or legal status of any debt;**
                                              **\* \* \***

18

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**

***

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

133.    Keough violated sections 1692e, e(2)(A), e(5) and e(10) of the FDCPA by mailing Plaintiffs a Notice of Debt in the form attached as Exhibit A, as the information contained in the Notice falsely, deceptively, and misleadingly communicated, and falsely threatened, that Plaintiffs could be sued on a date earlier than that allowed by law and/or earlier than Keough intended, which also misrepresented its status.

134.    Section 1692f provides:

**§ 1692f. Unfair Practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt…**

135.    Keough violated section 1692f of the FDCPA by mailing Plaintiffs a Notice of Debt in the form attached as Exhibit A, as the information contained in the Notice represents an unfair and unconscionable means to collect a debt, since Keough misrepresents the legal rights of Plaintiffs in its attempts to coerce them to pay what it demands.

136.    Plaintiffs bring this lawsuit individually and also on behalf of themselves and all other persons similarly situated under Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

137.    As part of Keough's debt collection practice, it regularly sends consumers form collection letters, of which the Notice is an example, and duns consumers by telephone calls and mailings, which fail to contain certain required information in violation of

19

the FDCPA, and/or which provide false information to consumers. This action is brought and may properly be maintained as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, predominance, typicality, adequacy, and/or superiority requirements of those provisions. Plaintiffs do not know the exact size of the class, as such information is in Keough's possession, but Keough regularly uses form letters such as the one at issue in this case and the volume of Keough's business, with respect to representation of condominium associations in connection with the mailings of letters of the type mailed in this case, is large enough so that numerosity may be presumed.

138.    Common questions of law and fact exist as to all members of the class and predominate over any questions affecting individual members of the class, including Plaintiffs, including but not limited to whether Keough's collection letter mailed to Plaintiffs violated the FDCPA.

139.    This class action complaint is brought on behalf of: 1) all persons who were mailed a Notice pursuant to Section 9-102 et seq. of the Illinois Code of Civil Procedure, 2) which states that "…This is your Notice pursuant to Section 9-102 et seq. of the Illinois Code of Civil Procedure that payment in full of the amount stated above is demanded of you, and unless payment of the full amount in certified funds is made within thirty-five (35) days of the date of this Notice,  A LAWSUIT MAY BE FILED TO TERMINATE YOUR RIGHT TO POSSESION OF THE UNIT…", 3) and which also states that "…THE LAW DOES NOT REQUIRE ME TO WAIT UNTIL THE END OF THE THIRTY (30) DAY PERIOD BEFORE SUING YOU TO COLLECT THIS DEBT…",  4) where said Notice was mailed between the period which begins one year prior to the filing of this lawsuit, and which ends on the date of filing of this lawsuit.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against

Defendant on behalf of themselves and a Class, for the following:

a)   Statutory and actual damages, if any, pursuant to 15 U.S.C. § 1692k for each Plaintiff and Class Member;

b)   Plaintiffs' and the Class' attorney fees and costs; and

c)   Any other relief deemed appropriate by this Honorable Court.

## COUNT II—FDCPA—CLASS COUNT

140.   Plaintiffs incorporate by reference the foregoing paragraphs.

141.   Section 1692g provides as follows:

**§ 1692g. Validation of debts.**

**(a) Notice of debt; contents**

**Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**

**(1) the amount of the debt;**
**(2) the name of the creditor to whom the debt is owed;**
**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**
**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**
**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts**

**If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt**

**collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

142.     Section 1692g requires that a debt collector include a validation notice either with, or within five (5) days of, the initial communication from the debt collector to the consumer. This notice is intended to advise the consumer as to certain federal rights in connection with a procedure under which a consumer may dispute a debt, require verification of a debt, or obtain certain information about the original creditor within thirty (30) days after receipt of the notice from a debt collector.

143.     Under the FDCPA this validation notice must be effectively communicated, and may not be overshadowed, confounded, or eviscerated by other language or words as seen from the perspective of the unsophisticated consumer. *See, i.e, Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518–19 (7th Cir.1997).

144     The State Action complaint was served on Plaintiffs on November 21, 2019 and December 11, 2019, and contained a new Notice of Debt that is a form document.

145.     The Notice of Debt contained within the State Action gives Plaintiffs 30 days to dispute the debt in writing, from November 21, 2019. (Exhibit D, Summons and State Action Complaint).

146.     The Summons associated with the State Action states that a trial is set to occur on December 2, 2019. (Exhibit D, Summons and State Action Complaint).

22

147.    Keough thus gives Plaintiffs until December 21, 2019 to dispute the alleged debt, but only until December 2, 2019 to pay it—or face trial on that date.

148.    Plaintiffs were confused as to what the effect of disputing the alleged debt in writing by December 21, 2019 would be, if trial is set for December 2, 2019.

149.    Th unsophisticated consumer would be confused as to the effect of disputing the alleged debt in writing by December 21, 2019, when a trial was already set to proceed on December 2, 2019.

150.    The confusion was exacerbated because the "Notice of Debt" provided to Plaintiffs on November 21, 2019, failed to inform Plaintiffs that Keough would have to suspend any attempts to collect the alleged debt *via litigation*, if a timely written dispute was communicated to Keough by Plaintiffs, until or unless Keough mailed verification to the Plaintiff.

151.    Keough violated section 1692g of the FDCPA by mailing Plaintiffs a Notice of Debt in the form attached within Exhibit D, since the Notice of Debt served on Plaintiffs overshadowed, confounded, and/or eviscerated Plaintiffs' rights to receive validation of the alleged debt.

152.    Plaintiffs bring this lawsuit individually and also on behalf of themselves and all other persons similarly situated under Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

153.    As part of Keough's debt collection practice, it regularly sends consumers form collection letters and duns consumers by telephone calls and mailings, which fail to contain certain required information in violation of the FDCPA, which provide the information in a confusing manner, and/or which provide false information to consumers.

154.     This action is brought and may properly be maintained as a class action pursuant

Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity,

predominance, typicality, adequacy, and/or superiority requirements of those provisions.

Plaintiffs do not know the exact size of the class, as such information is in Keough's possession,

but Keough regularly uses form letters such as the one at issue in this case and the volume of

Keough's business, with respect to representation of condominium associations in connection

with the service of letters of the type mailed in this case, is large enough so that numerosity may

be presumed.

155.     Common questions of law and fact exist as to all members of the class and

predominate over any questions affecting individual members of the class, including Plaintiffs,

including but not limited to whether Keough's Notice of Debt served on Plaintiffs on November

21, 2019, violated the FDCPA.

156.     This class action complaint is brought on behalf of: 1) all persons who were

served with Notice of Debt contained within a collection complaint seeking possession of

property pursuant to Section 9-102 et seq. of the Illinois Code of Civil Procedure, 2) which was

served with a summons for trial that sets trial to proceed less than 30 days from the date of

service of said complaint and Notice of Debt, 3) where the Notice of Debt does not state or

indicate that, if proof of the debt or the name and address of the original creditor is requested in

writing within the thirty-day period that begins with the persons receipt of the letter, the law

requires Keough to suspend its efforts (through litigation or otherwise) to collect the debt until it

mails the requested information to said person, 4) where said Notice was mailed between the

period which begins one year prior to the filing of this lawsuit, and which ends on the date of

filing of this lawsuit.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendant on behalf of themselves and a Class, for the following:

a)      Statutory and actual damages, if any, pursuant to 15 U.S.C. § 1692k for each Plaintiff and Class Member;

b)      Plaintiffs' and the Class' attorney fees and costs; and

c)      Any other relief deemed appropriate by this Honorable Court.

### COUNT III—FDCPA –CLASS COUNT

157.    Plaintiffs incorporate by reference the foregoing paragraphs.

158.    Section 1692g provides as follows:

**§ 1692g. Validation of debts.**

**(a) Notice of debt; contents**

**Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**

**(1) the amount of the debt;**
**(2) the name of the creditor to whom the debt is owed;**
**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**
**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**
**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts**

**If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that**

**the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

159.    Section 1692g requires that a debt collector communicate the "amount of debt" with the initial communication or within five (5) days of, the initial communication from the debt collector to the consumer.

160.    Under the FDCPA this validation notice must be effectively communicated, and may not be overshadowed, confounded, or eviscerated by other language or words as seen from the perspective of the unsophisticated consumer. *See, i.e, Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518–19 (7th Cir.1997).

161.    The State Action was served on Plaintiffs on November 21, 2019 and on December 11, 2019, and contained a new Notice of Debt that is a form document.

162.    The Notices of Debt contained within the State Actions did not state the amount of debt.

163.    Moreover, there was no "notice contained herewith" provided to Plaintiff within the Notices of Debt, though such a notice was referenced.

164.    The Seventh Circuit has explained that § 1692g(a)(1) requires a collection letter to "state [the amount of debt] clearly enough that the recipient is likely to understand it." *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004).

165.    Keough violated § 1692g(a)(1) by not stating the amount of debt in its communication to Plaintiff Bastl.

166.    The Summons associated with the State Action states that a trial is set to occur on December 2, 2019. (Exhibit D, Summons and State Action Complaint).

167.    Keough thus gives Plaintiffs until December 21, 2019 to dispute the alleged debt, but only until December 2, 2019 to pay it—or face trial on that date.

168.    Plaintiffs were confused as to what the effect of disputing the alleged debt in writing by December 21, 2019 would be, if trial is set for December 2, 2019.

169     Th unsophisticated consumer would be confused as to the effect of disputing the alleged debt in writing by December 21, 2019, when a trial was already set to proceed on December 2, 2019.

170.    The confusion was exacerbated because the "Notice of Debt" provided to Plaintiffs on November 21, 2019, failed to inform Plaintiffs that Keough would have to suspend any attempts to collect the alleged debt *via litigation*, if a timely written dispute was communicated to Keough by Plaintiffs, until or unless Keough mailed verification to the Plaintiff.

180.    Keough violated section 1692g of the FDCPA by mailing Plaintiffs a Notice of Debt in the form attached within Exhibit D, since the Notice of Debt served on Plaintiffs overshadowed, confounded, and/or eviscerated Plaintiffs' rights to receive validation of the alleged debt.

181.    Plaintiffs bring this lawsuit individually and also on behalf of themselves and all other persons similarly situated under Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

182.     As part of Keough's debt collection practice, it regularly sends consumers form collection letters and duns consumers by telephone calls and mailings, which fail to contain certain required information in violation of the FDCPA, which provide the information in a confusing manner, and/or which provide false information to consumers.

183.     This action is brought and may properly be maintained as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, predominance, typicality, adequacy, and/or superiority requirements of those provisions. Plaintiffs do not know the exact size of the class, as such information is in Keough's possession, but Keough regularly uses form letters such as the one at issue in this case and the volume of Keough's business, with respect to representation of condominium associations in connection with the service of letters of the type mailed in this case, is large enough so that numerosity may be presumed.

184.     Common questions of law and fact exist as to all members of the class and predominate over any questions affecting individual members of the class, including Plaintiffs, including but not limited to whether Keough's Notice of Debt served on Plaintiffs on November 21, 2019, violated the FDCPA.

185.     This class action complaint is brought on behalf of: 1) all persons who were served with Notice of Debt contained within a collection complaint seeking possession of property pursuant to Section 9-102 et seq. of the Illinois Code of Civil Procedure, 2) which was served with a summons for trial that sets trial to proceed less than 30 days from the date of service of said complaint and Notice of Debt, 3) where the Notice of Debt does not state or indicate that, if proof of the debt or the name and address of the original creditor is requested in writing within the thirty-day period that begins with the persons receipt of the letter, the law

requires Keough to suspend its efforts (through litigation or otherwise) to collect the debt until it mails the requested information to said person, 4) where said Notice of Debt states in part that "The amount of debt appears on the notice enclosed herewith", where no document identified as a "notice" was enclosed therewith 5) where said Notice was mailed between the period which begins one year prior to the filing of this lawsuit, and which ends on the date of filing of this lawsuit.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendant on behalf of themselves and a Class, for the following:

a)  Statutory and actual damages, if any, pursuant to 15 U.S.C. § 1692k for each Plaintiff and Class Member;

b)  Plaintiffs' and the Class' attorney fees and costs; and

c)  Any other relief deemed appropriate by this Honorable Court.

## FDCPA—INDIVIDUAL CLAIMS

186.  Plaintiffs incorporate by reference the foregoing paragraphs.

187.  Keough violated § 1692e of the FDCPA by misrepresenting the amount of the alleged debt.

188.  Keough violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10) by communicating false, misleading, and deceptive return and trial dates to Plaintiff Greenman, as described above

189.  Keough violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f via its  practices of: waiting up to a month to provide Plaintiffs with Orders entered in the State Actions to prevent consumers from appearing a Court, purposefully waiting weeks to deposit checks paid by Plaintiffs to induce late charges and further attorney fees, obtaining continuances in court when the claim was moot and the debt paid for the purpose of churning

attorney fees and costs, and refusal to provide the amounts it states Plaintiffs owe for the purpose of continuing the State Action litigation to obtain further fees and costs, and collecting amounts not due and owing, as such actions constitute misleading, deceptive, confusing, unconscionable, and unfair actions.

190.    Keough violated § 1692f(1) of the FDCPA by attempting to collect amounts from Plaintiffs that are neither authorized by law, nor by the agreement that created the alleged debt, including but not limited to legal charges and late charges.

191.    Keough violated 15 U.S.C. § 1692d via its practices of: waiting up to a month to provide Plaintiffs with Orders entered in the State Actions to prevent consumers from appearing a Court, purposefully waiting weeks to deposit checks paid by Plaintiffs to induce the imposition of late charges and further attorney fees, obtaining continuances in court when the claim was moot and the debt paid for the purpose of churning attorney fees and costs, and refusal to provide the amounts it states Plaintiffs owe for the purpose of continuing the State Action litigation to obtain further fees and costs, and collecting amounts not due and owing, as such actions constitute conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of § 1692d.

192.    Keough violated § 1692g of the FDCPA by failing to send Plaintiffs a Notice of Debt within five days after the initial communication with a consumer in connection with the collection of the debts sought to be collected in Exhibits B and C attached hereto, the Second Letter and Third Letter, respectively.

193.    Keough failed to indicate, in a subsequent communication with Plaintiff, that the communication that it submitted to Plaintiffs is from a debt collector, in violation of 15 U.S.C. §

1692e(11), which was misleading as to whether the communication came from the Court or Defendant.

194. Keough's collection communications and activities are to be interpreted under the "unsophisticated consumer" standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

195. Plaintiffs suffered statutory and actual damages as the result of Keough's actions, since they were required to pay an amount they did not owe to Defendant, incurred further legal charges and late charges, which amount they could not afford to pay, and were given false, deceptive, and misleading information about their debts.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendant, for the following:

a) Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k for each Plaintiff;

b) Actual damages suffered by Plaintiffs;

c) Plaintiffs' attorney fees and costs; and

d) Any other relief deemed appropriate by this Honorable Court.

Respectfully Submitted,

By: */s/ M. Kris Kasalo*

**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, IL 60602
tele 312-726-6160
fax 312-698-5054
mario.kasalo@kasalolaw.com